UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

ALFRED W. TRENKLER

No. 92-CR-10369-WES-2

**DEFENDANT'S RESPONSE TO COURT'S MARCH 26, 2021 ORDER**

On March 26, the Court ordered a response to the question whether it has the discretion, under 18 U.S.C. § 3582(c)(1)(A), to conclude that the error that occurred at Mr. Trenkler's sentencing constitutes extraordinary and compelling reasons warranting a sentence reduction. The answer to that question is Yes, as long as the Court conducts an individualized assessment of the facts and circumstances of the case.

1. **THE COURT HAS DISCRETION TO FIND *ANY* CIRCUMSTANCE EXTRAORDINARY AND COMPELLING, INCLUDING THE ILLEGAL LIFE SENTENCE IMPOSED IN THIS CASE.**

The Court's discretion to determine what constitute extraordinary and compelling circumstances is extremely broad, cabined only by the statute. *See United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) ("the [FSA] freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("[B]ecause the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion"); *United States v. Jones,* 980 F.3d 1098, 1109 (6th Cir.

1

2020) ("district courts have full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release"); *United States v. McCoy*, 981 F.3d 271, 281-82 (4th Cir. 2020) ("district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise'"); *United States v. McGee*, No. 20-5047, 2021 U.S. App. LEXIS 9074, *21 (10th Cir. Mar. 29, 2021) ("district courts, in applying the first part of §3582(c)(1)(A)'s statutory test, have the authority to determine for themselves what constitutes 'extraordinary and compelling reasons,'" although they must find their determination "consistent with" applicable policy statements, which are not binding in any event); *see also United States v. Fox*, No. 19-1785 (1st Cir. July 23, 2020), *aff'g* No. 2:14-cr-00003-DBH, 2019 U.S. Dist. LEXIS 115388 (D. Me. July 11, 2019) (summarily affirming district court's denial of relief, noting with apparent approval that "the district court did consider other relevant circumstances not specifically enumerated in the guidelines en route to denying relief"), *cited in United States v. Leonard*, No. 2:18-cr-00070-GZS, 2021 U.S. Dist. LEXIS 27351, *1-2 (D. Me. Feb. 12, 2021); *United States v. Vigneau*, 473 F. Supp. 3d 31, 35 (D.R.I. 2020); *United States v. Meuse*, 94-cr-10337-MLW, D.E. 939 (D. Mass. Feb. 12, 2021) (reducing 627-month sentence to time-served, on basis of COVID-19 and FSA's elimination of stacking of § 924(c) counts).

Absent an applicable policy statement, three statutory criteria guide the Court's discretion under §3582(c)(1)(A)(i). First, it can grant the motion only for "extraordinary and compelling reason[s]." 18 U.S.C. §3582(c)(1)(A)(i). Second, "[r]ehabilitation … alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. §994(t). Third, the Court may grant the reduction only "after considering the factors set forth in section 3553(a)." 18 U.S.C. §3582(c)(1)(A)(i); *cf. McGee*, 2021 U.S. App. LEXIS 9074 at *14 (outlining "three-step test" for courts considering

compassionate release motions, with full discretion vested in the district court to determine extraordinary and compelling reasons at step 1, *even if* there is an applicable policy statement).

The "extraordinary and compelling" circumstances standard, along with the required individualized assessment, amply protect against either a "floodgates" concern or a blurring of the line between compassionate release and habeas. *See McCoy*, 981 F.3d at 288 (noting that district courts' discretion is "cabined by the statutory requirements of §3582(c)(1)(A)"); *Gunn*, 980 F.3d at 1180-81 (observing that the "extraordinary and compelling reasons" standard prevents §3582(c)(1)(A) from becoming a "Wild West" of sentence reductions); *McGee*, 2021 U.S. App. Lexis 9074 at *28 (individualized assessment serves to harmonize exercise of discretion to recognize change in law under §3582(c)(1)(A) with Congress's determination not to make the change retroactive). Furthermore, Congress's intent, in passing the FSA, was to increase the use of compassionate release. *Id.* at *23.

Accordingly, the Court has discretion to determine that the illegal Life sentence imposed in this case is an extraordinary and compelling circumstance warranting relief.[1] The error is "extraordinary" – indeed, it is virtually *sui generis*. Counsel is aware of no comparable situation. It is "compelling" because it means the difference between death in prison and life outside its walls for Mr. Trenkler. It is also compelling from a systemic integrity standpoint: to date, our justice system has preferred to leave a man to die in prison rather than acknowledge that mistakes happen in our legal system. *See Trenkler v. United States,* 536 F.3d 85, 100 (1st Cir. 2008) (re-instating Life sentence because Mr. Trenkler "failed to raise [his] claim of error at the appropriate time," warranting

---

[1] This is true whether the claim is viewed as a legal error or a disparity between the term of years that should have been given – and *was* given by Judge Zobel – and the Life sentence that was imposed.

"enforcement of the usual rules of waiver and preclusion"). "To err is human." Alexander Pope, An Essay on Criticism, Part II, line 525 (1711). This Court has the capacity to correct the wrong.[2]

*The fact that the error is a legal one, in addition to an equitable one, is not a bar.* Courts properly consider legal error in compassionate release cases. *See, e.g., United States v. Wahid*, 2020 WL 4734409, at *2 (N.D. Ohio Aug. 14, 2020) (defendant-petitioner was wrongly classified as a career offender); *United States v. Alexandre*, 2020 WL 6268136 (N.D. Ohio Oct. 26, 2020) (same); *United States v. Danson*, 2020 WL 3467887 (D.D.C. Jun. 25, 2020) (considering same issue as part of § 3553(a) analysis);[3] *United States v. Hickman*, 2020 WL 6393391 (D. Md. Nov. 2, 2020) (same); *United States v. Bryant*, 2020 WL 6686414 (E.D. Wash. Nov. 12, 2020) (defendant-petitioner should not have been classified as an Armed Career Criminal); *United States v. Cano,* No. 95-00481, 2020 U.S. Dist. LEXIS 239859, *11-15 (S.D. Fla. Dec. 16, 2020) (guidelines error as well as *Apprendi* claim); *United States v. Ikegwuonu*, 2021 U.S. Dist. LEXIS 35423 (W.D. Wis. February 24, 2021) (*Dean* error).

*The fact that the error existed at the time of sentencing is not a bar.* Errors that existed at the time of sentencing often surface in compassionate release cases. *See, e.g., United States v. Cano,* No. 95-00481, 2020 U.S. Dist. LEXIS 239859, *13 (S.D. Fla. Dec. 16, 2020) (rejecting government argument that

---

[2] The government may argue that the severity of the crime automatically merits a Life sentence. Yes, the crime was horrific. The crime is devastating to this day. *And* the 37-year term Judge Zobel was prepared to impose was already nearly double the national average sentence for murder in the federal system, approximately 21 years. *See Haynes*, 2021 U.S. Dist. LEXIS 21964 at *17; https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2019/7c19.pdf at 11 (Table 7) (excluding manslaughter sentences). Still, 37 years is not a life term, and had it been upheld, Trenkler would be on the verge of release.
[3] As these cases demonstrate, the Court could consider the illegal Life sentence as an "extraordinary and compelling" circumstance, or as part of the §3553(a) analysis. Given the government's concession that Mr. Trenkler's health conditions constitute extraordinary and compelling reasons, D.E. 758 at 7, the Court only needs to apply the §3553(a) factors.

"the issue was raised and argued extensively by both sides at Defendant's sentencing hearing"). *Brooker* provides a helpful example. There, the sentencing court chose to run a §924(c) conviction concurrent with the underlying conviction, finding a longer sentence unnecessary. 976 F.3d at 231. After an intervening Supreme Court decision, the Second Circuit vacated the concurrent sentences and remanded for the imposition of consecutive sentences. *Id.* The Second Circuit held that the issue was within the court's discretion to consider on compassionate release. *Id.* at 237-38. The question whether the sentences could run consecutively was a legal one, raised before the district court and the Circuit, that existed at the time of sentencing.

*The fact that the illegal life sentence was raised in a* coram nobis *petition that was rejected by the First Circuit is also not a bar.* As discussed above, nothing in §3582(c)(1)(A) precludes courts from considering facets of a case that have previously been considered on direct appeal or in habeas proceedings. Indeed, many of the post-FSA compassionate release grants have been based, in part or in whole, on claims previously raised and rejected. *See, e.g., Cano*, 2020 U.S. Dist. LEXIS 239859 at *14 (rejecting government argument that claim was "unsuccessfully raised on direct appeal and in collateral attacks"); *Brooker*, 976 F.3d at 231 (Circuit vacated district court's determination that sentences could be run concurrently); *McGee*, 2021 U.S. App. Lexis 9074 at *5 (claim previously raised and rejected in § 2255 proceedings). This is especially important here, where the First Circuit's reversal of the *coram nobis* grant was entirely procedural, not on the merits. *See Trenkler*, 536 F.3d at 98 ("the petition was an unauthorized second or successive habeas petition and was foreclosed on that basis") (citations omitted).[4] It did not deny that the error occurred. Nor could it. And third, this

---

[4] Given the First Circuit decision that Judge Zobel lacked jurisdiction over the petition, it is unclear whether any court has *ever* had jurisdiction to consider the question of the illegal Life sentence.

Court is asked to consider the illegality of the sentence as an equitable matter – it is unjust that Mr. Trenkler serve out a Life sentence which Congress precluded when it wrote the statute of conviction. As discussed below, Congress *intended* compassionate release to function as a safety valve to remedy injustice that cannot be addressed through any other means.

The cases granting compassionate release based on stacked § 924(c) sentences are strong indicators of just how broad the Court's discretion is. *See McCoy*, 981 F.3d at 285 (collecting cases). In those cases, the FSA eliminated the "stacking" of § 924(c) sentences, yet it determined not to make that change retroactive. *See id.* at 286-88. The government argued that recognizing this change as a basis for compassionate release would permit §3582(c)(1)(A) to serve as an end-run around Congress's non-retroactivity determination. *See id.* at 286. The courts have disagreed. *See id.*

2.  **CONGRESS *INTENDED* § 3582(c)(1)(A) TO FUNCTION AS A SAFETY VALVE, CONFERRING BROAD DISCRETION IN THE COURTS, TO IDENTIFY EXTRAORDINARY SITUATIONS IN NEED OF REMEDY.**

Not only does §3582(c)(1)(A) *permit* the exercise of broad discretion, it was *intended* "to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." *McCoy*, 981 F.3d at 287 (quoting *United States v. Jones*, 482 F. Supp. 3d 969, 980 (N.D. Cal. 2020)); *McGee*, 2021 U.S. App. Lexis 9074 at *23 ("Congress intended for §3582(c)(1)(A) to provide a 'safety valve' that allows for sentence reductions to any defendant when there is not a specific statute that already affords relief" (citation omitted)); *see also United States v. Haynes*, No. 4:96-cr-40034, 2021 U.S. Dist. LEXIS 21964, *11 (C.D. Ill. Feb. 4, 2021) (quoting statements by Senate Judiciary Committee).

The larger statutory scheme reinforces this conclusion. Section 994(t) illustrates that if Congress wanted to exclude or cabin consideration of some kinds of cases or issues, "it knew how to say so." *Williamson v. CIR*, 974 F.2d 1525, 1530-31 (9th Cir. 1992). In other words, §994(t)

6

reinforces the idea that circumstances not singled out in §994(t) are fair game, so long as they are extraordinary and compelling. *See Castillo v. Metro. Life*, 970 F.3d 1224, 1232 (9th Cir. 2020) (describing the canon "*expressio unius est exclusion alterius*"); *see also Brooker*, 976 F.3d at 237-38. A comparison to the other subsections of §3582(c) further underscores the flexibility of the §3582(c)(1)(A)(i) standard: while "[o]ther subsections of the compassionate release statute [*e.g.,* §§3582(c)(1)(A)(ii) & 3582(c)(2)] specify particular circumstances that may merit sentence reductions[,] … §3582(c)(1)(A)(i) … uses more open-ended language" that can apply to a variety of factual scenarios, including legal error and grievous injustice. *McCoy*, 981 F.3d at 276 n.1.

The history of the statute confirms that courts' capacity to sit in a "second-look" function, absent any procedural obstacles, is exactly what Congress intended. Section 3582(c)(1)(A)(i) rose from the ashes of the old parole system, when Congress moved to determinate sentencing under the Guidelines. *See* Shon Hopwood, *Second Looks & Second Chances*, 41 Cardozo L. Rev. 83, 100–102 (2019); *Brooker*, 976 F.3d at 231 n.1 (citing Hopwood). Under the parole system, a predecessor statute, 18 U.S.C. §4205(g), had permitted district courts to "reduce any minimum term to the time the defendant has served" "upon motion of the Bureau of Prisons." Hopwood at 100 (quoting §4205(g)). Courts granted sentence reductions under §4205(g) to correct for sentence disparities and reduce overly long sentences. *See id.* at 100-01 (citations omitted).

When Congress scrapped the parole system in the Comprehensive Crime Control Act of 1984, it preserved in §3582(c) the discretion conferred in §4205(g), along with a measure of the parole system's capacity to respond to change. *See* Hopwood at 114. The Senate Report accompanying the bill recognized that even under a determinate sentencing regime, there would be "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances." S. Rep. No. 98-225 at 55 (1983), *cited in Vigneau*, 473 F. Supp. 3d at 36.

Congress contemplated that these conditions would include cases of illness, some Guidelines changes, and – most importantly here – "cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence." *Id.* at 55. Instead of vesting discretion to recognize such circumstances in the parole board, § 3582(c) shifted it to the courts.

In this way, Congress created in the various subsections of §3582(c) a set of "'safety valves' for modification of sentences." S. Rep. No. 98-225 at 121. "The value of the forms of 'safety valves' contained in [§3582(c)] lies in the fact that they assure the availability of specific review and reduction of a term of imprisonment for 'extraordinary and compelling reasons.'" *Id.* Unlike the parole system, however, §3582(c) "keeps the sentencing power in the judiciary where it belongs," while "permit[ting] later review of sentences in particularly compelling situations." *Id.*

In sum, the text and history of the statute indicate no categorical limitation on the kinds of circumstances courts can find "extraordinary and compelling." To the contrary: §3582(c)(1)(A)(i) was intended to permit relief in extraordinary cases for which no other avenue of redress is available.

**3.      THE CASES TO THE CONTRARY ARE NOT PERSUASIVE.**

Several decisions have stated, in passing, that legal errors that can be remedied on direct appeal or habeas should not be the basis for compassionate release. These cases are few; they treat the issue summarily; the petitioners were largely *pro se*; none addresses the role of compassionate release to redress situations otherwise not redressable; and none presents comparable circumstances.

In *United States v. Rivernider*, No. 3:10-cr-222(RNC), 2020 U.S. Dist. LEXIS 21292, *1, *7-*8 (D. Conn. Feb. 7, 2020), the district court rejected a *pro se* petitioner's prolix ineffective assistance of counsel claims. Believing itself bound by U.S.S.G. § 1B1.13, the court stated: "To my knowledge, nobody has suggested that the 'extraordinary and compelling' standard can be satisfied by claims of legal error or other alleged wrongs that are cognizable on direct appeal from a conviction or by

means of a habeas corpus petition." *Id.* at \*10. However, the court immediately noted that "Perhaps the 'extraordinary and compelling' standard in the residual category [of U.S.S.G. § 1B1.13] may permit legal errors that are no longer subject to correction on collateral attack to be given weight, as an equitable matter, in the context of a case involving an extraordinarily long sentence." *Id. Rivernider*'s statement about claims cognizable on habeas is not persuasive for multiple reasons: (1) the issue was not subjected to meaningful adversarial testing; (2) the district court erroneously thought itself bound by the policy statement; and (3) the instant case fits under the category of errors the court said *could* be considered in a compassionate release case: those not redressable by other means. *See McCoy*, 981 F.3d at 288 ("'§3582(c)(1)(A) 'represents Congress's judgment that the generic interest in finality must give way in certain individual cases,' and authorizes judges to implement that judgment." (citation omitted)).

In *United States v. Lisi*, again applying U.S.S.G. §1B1.13, the court stated its "belie[f] that it would be both improper and inconsistent with the First Step Act to allow Lisi to use 18 U.S.C. §3582(c)(1)(A) as a vehicle for claiming legal wrongs, instead of following the normal methods of a direct appeal or a habeas petition." 440 F. Supp. 3d 246, 251 (S.D.N.Y. Jan. 27, 2020). Here, however, it is undisputed that there are no procedural methods available. Indeed, Trenkler is in this rare position after having had the claim overturned on a writ of *coram nobis, on procedural grounds. Lisi* is not persuasive for largely the same reasons as *Rivernider*.

In *United States v. Handerhan*, the Third Circuit summarily affirmed the denial of a *pro se* petition challenging error in the applicable guideline range and the preparedness of substitute counsel. 789 F. App'x 924, 925-26 (3d Cir. 2019). The panel "question[ed] whether an alleged sentencing error that was correctible in prior proceedings could ever be an 'extraordinary and compelling reason' for release under §3582(c)(1)(A)(i)…. however, [] we need not decide that issue."

9

Case 1:92-cr-10369-WES Document 790 Filed 03/31/21 Page 10 of 11

*Id.* The non-precedential decision is unpersuasive. The issue was not presented with any clarity, to any court, by a *pro se* petitioner; the claims differ materially from the issue presented here; and the statement is expressly *dicta*. It bears noting that the three cases above date from right after the passage of the FSA, when the case law exploring the breadth of courts' discretion was still nascent.[5]

In conclusion, the Court has discretion to find that the illegal Life sentence imposed in this case is an extraordinary and compelling reason warranting relief. The Life sentence is not only illegal; it is also disproportionate to the 12-year sentence Thomas Shay received, as the ringleader in the conspiracy; disproportionate to the sentence Mr. Trenkler would likely have received post-*Booker*, when the Guidelines became advisory; and based on a finding of intent to kill made by the judge, on a circumstantial record, by a mere preponderance of the evidence, where it is clear the ringleader had no such intent. And these sentencing factors sit alongside Mr. Trenkler's advanced age and myriad health issues, and a global pandemic not likely to cede its grip anytime soon. Finally, Mr. Trenkler has had only minor disciplinary infractions over 27 years of incarceration and he has a stable and safe release plan.

---

[5] *United States v. Fine* affirmed the district court's denial of a claim regarding the defendant's career offender status as an improper second or successive motion. 982 F.3d 1117, 1118 (8th Cir. 2020). The court declined to consider the "broader issue" of "what reasons a court may consider extraordinarily and compelling," noting that Fine did not raise the sentencing error "as an 'extraordinary and compelling' reason, independent of the validity of his sentence." *Id. United States v. Musgraves* found that the "district court reasonably concluded that [an] allegedly unjust criminal investigation (based on the informant's recanted testimony) was not 'a basis' for compassionate release." No. 20-2702, 2021 U.S. App. LEXIS 7285, at *4 (7th Cir. Mar. 12, 2021). The court independently denied relief based on dangerousness. *Id.* at *5-*6; *see also Haynes*, 2021 U.S. Dist. LEXIS 21964 at *5. These cases are inapt and unpersuasive. To the extent they address challenges to the validity of *convictions*, the illegal Life sentence here is not such an error. And to the extent they suggest that certain kinds of legal errors raise the spectre of an overlap between habeas and compassionate release, the Court's ability to consider the *equities* of the instant Life sentence is beyond question. Moreover, as discussed, the legislative history shows that compassionate release was intended to provide redress where it is unavailable elsewhere. That is the situation here.

10

        Respectfully submitted,

        **ALFRED TRENKLER**

        By his attorneys,

        */s/ Nancy Gertner*
        Nancy Gertner (BBO # 190140)
        Amy Barsky (BBO #601111)
        FICK & MARX LLP
        24 Federal Street, 4th Floor
        Boston, MA 02110
        (857) 321-8360
        NGERTNER@FICKMARX.COM
        ABARSKY@FICKMARX.COM

        SCOTT P. LOPEZ (BBO # 549556)
        LAWSON & WEITZEN LLP
        88 BLACK FALCON AVENUE, SUITE 345
        BOSTON, MA 02210
        617-439-4990 EXT 3076
        SPLOPEZ@LAWSON-WEITZEN.COM

Dated: March 31, 2021

## CERTIFICATE OF SERVICE

I, Nancy Gertner, as counsel to Defendant Alfred Trenkler, certify that on March 31, 2021, I caused the foregoing document to be served by ECF on the registered participants as indicated on the Notice of Electronic Filing.

        */s/ Nancy Gertner*
        Nancy Gertner