# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALFRED TRENKLER,<br>       Defendant. | No. 92-cr-10369-WES-2 |

## GOVERNMENT'S RESPONSE TO COURT'S ORDER

The government respectfully responds to the Court's March 26, 2021 Order.  The defendant's position, that Congress aimed to afford courts discretion to determine in individual cases whether there is a basis for a sentence reduction, ignores the text of the compassionate release statute.  Even were the Court to find that it has such discretion here, that discretion is cabined by the First Circuit's reversal of the *coram nobis* decision.  Accordingly, the alleged error at the time of the defendant's sentencing does not constitute an "extraordinary and compelling circumstance" on which the Court can grant compassionate release.

## I.   THE REQUESTED RELIEF WOULD BE INCONSISTENT WITH THE APPLICABLE SENTENCING GUIDELINE

Under 18 U.S.C. § 3582(c)(1)(A)(i), a reduction in the term of imprisonment for "extraordinary and compelling circumstances" must be "consistent with applicable policy statements issued by the Sentencing Commission."  While the First Step Act ("FSA") amended § 3582(c)(1)(A) to provide that, in addition to the Bureau of Prisons ("BOP"), a defendant may, after exhausting his administrative remedies, move for compassionate release under the statute, the FSA did not change the critical statutory command that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission"—here, USSG § 1B1.13.  The alleged sentencing defect in this case falls well outside the ambit of that policy statement and the

guidance for determining the existence of "extraordinary and compelling circumstances" set forth at Application Note 1(A) of that policy statement.

The Supreme Court confirmed, in *Dillon v. United States*, 560 U.S. 817 (2010), that the requirement that a reduction in sentence under § 3582(c) must be "consistent with applicable policy statements issued by the Sentencing Commission" is binding.  While *Dillon* concerned a motion to reduce a sentence under § 3582(c)(2), which allows a sentence reduction in limited circumstances upon the Commission's adoption of a retroactive guideline amendment lowering a guideline range, that subsection allows such an action only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"—language identical to that which appears in § 3582(c)(1)(A).

Moreover, some courts, including at least one court in the District of Massachusetts, have concluded that while not bound by § 1B1.13, that provision is nonetheless an important point of reference for courts to consider in considering motions for compassionate release.  *See, e.g.*, *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (Young, J.) ("Read in light of the [FSA], it is consistent with the old policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to [BOP] in evaluating motions by defendants for compassionate release," quoting *United States v. Beck*, 425 F. Supp. 3d 573, 583 (N.D.N.C. 2019) (internal quotation marks omitted)).  Indeed, one of the appellate decisions that has held § 1B1.13 is not binding on district courts nonetheless observed: "The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Note provide a working definition of 'extraordinary and compelling reasons': a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused.  In this way the Commission's

analysis can provide discretion without being conclusive." *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

Further, the decisions of the courts of appeals that have held that § 1B1.13 is not binding, none of which are binding on this Court, were wrongly decided.  In *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), for example, the Second Circuit observed that the FSA retained the language that a reduction in sentence for compassionate release must be consistent with *applicable* policy statements issued by the Commission, but held that by its terms § 1B1.13 is not "applicable" to motions brought by defendants.  The court decided that, rather than abolish the policy statement, it should preserve as much as possible by retaining it for motions brought by BOP.  *Id.* at 235.  But given that Congress did not excise the language or provide explicitly that it applies only to motions brought by BOP, applying § 1B1.13 to motions brought by both BOP and a defendant would far more readily achieve the goal of preserving the language.  That is particularly apparent in *Brooker*, where the Second Circuit held that the district court had the power to determine whether the statutory requirement that a sentence under 18 U.S.C. § 924(c) run consecutively to another sentence presents an "extraordinary and compelling circumstance" under § 3582(c)(1)(A)(i). Given that Congress addressed § 924(c) in the FSA but left intact the requirement that a sentence under that statute run consecutively, it is virtually inconceivable that Congress intended that this could constitute an extraordinary and compelling reason for compassionate release.

The Fourth Circuit's decision in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), suffers from the same defects as does *Brooker*.  *McCoy* affirmed decisions of district courts that concluded the "stacked sentences" defendants had received under the pre-FSA version of § 924(c) presented extraordinary and compelling bases for compassionate release because they were longer than would be available post-FSA.  Like *Brooker*,  the Fourth Circuit held § 1B1.13 applicable

3

only to motions brought by BOP despite the tension in the FSA of the requirement that compassionate release decisions be consistent with applicable guidelines policy statements, and, while discussing the issue, provided no convincing argument as to why Congress could have intended that long sentences under § 924(c) be a basis for compassionate release given that it provided that the new provisions not be applied retroactively.  The same is true of the Tenth Circuit's newly-minted decision in *United States v. Maumau*, No. 20-4056 (10th Cir. Apr. 1, 2021), in which that court affirmed a grant of compassionate release in which, other than the defendant's youth at the time he participated in three robberies, the grant of compassionate release was based in large measure on a long sentence imposed under the pre-FSA version of § 924(c).

The other two appellate decisions at issue—*Gunn*, 980 F.3d 1176, and *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020)—repeat the *Brooker* error of reading out of the statute a provision Congress elected to retain.  Neither case, however, involves compassionate release from a § 924(c) sentence.  Indeed, in a post-*Jones* decision, the Sixth Circuit expressly declined to endorse the use of compassionate release with respect to a pre-FSA sentence under § 924(c), stating:

> [W]e will not render § 401(c) [of the FSA, limiting the retroactive application of the § 924(c) provisions] useless by using § 3582(c)(1)(A) as an end run around Congress's careful effort to limit the retroactivity of the [FSA's] reforms.

*United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. 2021).

## II.     THIS GROUND FOR COMPASSIONATE RELEASE IS FORECLOSED BY THE FIRST CIRCUIT'S DECISION IN *TRENKLER v. UNITED STATES*, 536 F.3d 85 (1ST CIR. 2008)

Even if § 1B1.13 did not limit what the Court may consider as an "extraordinary and compelling circumstance," the First Circuit's reversal of the district court's grant of *coram nobis* precludes a finding that any alleged sentencing error warrants a sentencing reduction here.

4

*Trenkler v. United States*, 536 F.3d 85 (1st Cir. 2008). There, the First Circuit reinstated Trenkler's

life sentence, despite the district court's finding that Trenkler's sentence had been imposed without

a jury directive and was thus illegal. *Id.* In so doing the First Circuit concluded that, despite its

characterization as a writ of *coram nobis*, "the substance of the petition in this case leaves no doubt

that, regardless of its label, the petition falls within the compass of [28 U.S.C.] section 2255." *Id.*

at 97. The First Circuit then stated:

> The conclusion that the petition should have been treated as one
> arising under section 2255 sounds a death knell for the proceeding.
> The petition was filed more than ten years after [the defendant's]
> conviction had become final and more than five years after an earlier
> section 2255 petition (itself deemed to be time-barred). No pre-
> clearance had been either sought or obtained in this court.
> Consequently, the petition was an unauthorized second or
> successive habeas petition and was foreclosed on that basis. *See* 28
> U.S.C. § 2255(h); *see also United States v. Barrett*, 178 F.3d 34, 42-
> 45 (1st Cir. 1999). Given this reality, the district court had only two
> choices: either dismiss the recharacterized petition or transfer it to
> this court. Either way, the case was at an end: dismissal would have
> ended it, and transferring the recharacterized petition would have
> been an exercise in futility. After all, the petition was not premised
> on either newly discovered evidence or a new rule of constitutional
> law. 28 U.S.C. § 2255.

*Id.* at 98 (internal citation omitted).

While the label has changed yet again, Trenkler's claim that his sentence was imposed

illegally remains "a classic habeas corpus scenario, squarely within the heartland carved out by

Congress in section 2255." *Id.* at 97. It was foreclosed in 2005, foreclosed in 2008, and remains

foreclosed today, even when recharacterized as a motion for compassionate release.

Trenkler is incorrect the First Circuit's decision was entirely procedural and not on the

merits. Rather, the First Circuit considered, and rejected, an argument that the so-called savings

clause found at 28 U.S.C. § 2255(e) should be invoked because § 2255 was "inadequate or

ineffective" in his case. *Id.* at 98-99. The court determined that Trenkler "had multiple

opportunities to challenge the imposition of his life sentences as inconsistent with the terms of the

statutes of conviction" and observed "[t]hat he neglected to avail himself of these opportunities in

no way detracts from  their adequacy and effectiveness." *Id.* at 99.  The First Circuit noted that

some courts have allowed recourse to the savings clause when strict adherence to the gatekeeping

provisions of § 2255 would result in a "complete miscarriage of justice," but noted that "[m]ost

courts have required a credible allegation of actual innocence to access the savings clause." *Id.* at

99 (cite omitted).   As counsel conceded at the March 24, 2021 chambers conference, the

defendant's compassionate release motion does not rely on an actual innocence claim.

The First Circuit also observed that the nature of the claim was incompatible with

invocation of the savings clause, noting:

> He does not charge that a life sentence is beyond the statutory
> maximum for the crimes of conviction.  Rather, his claim is
> procedural: that the statutes of conviction required a jury
> recommendation in order to impose a life sentence, and that the
> judge, not the jury, made the recommendation in his case.  This
> claim, if true, does not suggest a miscarriage of justice.

*Id.* at 99.  In so saying, the First Circuit observed that the Supreme Court had "defined the term

'miscarriage of justice' as encompassing only those 'extraordinary instances when a constitutional

violation probably caused the conviction of one innocent of the crime.'" *Id.* (citing *McCloskey v.

Zant*, 499 U.S. 467, 494 (1991)).  The First Circuit noted that the defendant had not challenged the

sufficiency of the evidence upon which the district court relied and had not suggested that a jury

would have reached a different result. *Id.*  The same is true today.

The First Circuit further observed that rules allocating decision-making responsibility

between judge and jury are generally regarded as procedural, and that misallocation of that

responsibility is unlikely to implicate the accuracy or fundamental fairness of judicial proceedings.

*Id.* at 99.  In this regard the court relied, in part, on its decision in *Sepulveda v. United States*, 330

F.3d 55, 61 (1st Cir. 2003), for the proposition that, in the *Apprendi* context, "decisions made by the judge instead of the jury are 'not the sort of error that necessarily undermines the fairness . . . of judicial proceedings.'" *Id.* at 99-100.

The conclusion that any alleged error in the imposition of Trenkler's sentence is not a valid basis for granting compassionate release is not altered by the sentence ultimately received by Thomas Shay: as demonstrated in a prior filing, Dkt. 758 at 11-12, Shay's sentence was driven by the fact that a different jury found him not guilty on Count Two, charging a violation of 18 U.S.C. § 844(d), which, the sentencing court noted, "was the only count in the indictment that called for proof of intent to kill." Dkt. 758, Ex. 6 at 103, 121. Nor, as the First Circuit held, does the fact that a judge rather than the jury made the determination assist the defendant. Finally, the fact that the judge made this determination by a preponderance of the evidence rather than beyond a reasonable doubt is of no moment: as the First Circuit stated in *Sepulveda*,

> "[A] decision . . . by a judge (on the preponderance standard) rather than a jury (on the reasonable-doubt standard) is not the sort of error that necessarily undermines the fairness . . . of judicial proceedings." Applying *Apprendi*'s procedural mandate retroactively would create an unacceptably high risk that those found guilty of criminal conduct might escape condign sentences.

330 F.3d at 61 (internal citation omitted). Accordingly, the claim that this Court may grant compassionate release based on the manner in which the defendant was sentenced must be rejected.

Courts have also questioned the availability of compassionate release for legal errors that could have been corrected through other vehicles. For example, as the defendant observes, the Third Circuit has "question[ed] whether an alleged sentencing error that was correctible in prior proceedings could ever be an 'extraordinary and compelling reason' for [compassionate] release." *United States v. Handerhan*, 789 Fed. App'x 924, 925 (3d Cir. 2019). While the Third Circuit did not resolve this issue, its instinct is in accord with the First Circuit's view in *Trenkler* that it is the

substance of a claim, and not the label, that determines whether it is cognizable under § 2255 and could or should have been raised earlier.  The same can be said for *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. Jan 27, 2020), in which the court questioned whether compassionate release could be used to correct legal errors that should be addressed on direct appeal or in a habeas petition, and other like cases cited by the defendant at pages 8-10 of his response to the Court's Order (Dkt. 790).

 The defendant seeks to distinguish his case on the ground that "it is undisputed that there are no procedural methods available" to him.  Dkt. 790 at 9.   But the point of the First Circuit's decision in *Trenkler*, and the courts considering the post-FSA compassionate release statute, is not that the defendant at present has an avenue to pursue his claim but instead that he had it in the past.  This circumstance precludes Trenkler's resort to compassionate release on the basis of an alleged sentencing error.

The defendant contends that "to the extent [the cases cited for the proposition that legal errors cannot be the basis for compassionate release] suggest that certain kinds of legal errors raise the specter of an overlap between habeas and compassionate release, the Court's ability to consider the *equities* of the instant Life sentence is beyond question."  Dkt. 790 at 10 n.5.  Yet, in light of *Trenkler*, the Court's ability to consider Trenkler's sentence is beyond question and would directly undermine the First Circuit's ruling upholding his sentence.  *See also, e.g.*, *Tomes*, 990 F.3d at 505 (refusing to countenance the use of compassionate release to reduce a pre-FSA § 924(c) sentence).

**CONCLUSION**

For the forgoing reasons, as well as the reasons outlined in the government's prior submissions in response to Trenkler's motion for compassionate release, his motion should be denied.

Respectfully submitted,

NATHANIEL MENDELL
Acting United States Attorney

By: */s/ Robert E. Richardson*
ROBERT E. RICHARDSON
KRISTEN A. KEARNEY
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be served on counsel of record as listed in the NEF.

Dated: April 6, 2021                              */s/ Robert E. Richardson*