# United States Court of Appeals
## For the First Circuit

No. 21-1441

UNITED STATES,

Appellant,

v.

ALFRED W. TRENKLER,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William E. Smith, U.S. District Judge[*]]

Before

Thompson, Selya, and Gelpí,
Circuit Judges.

Donald C. Lockhart, Assistant United States Attorney, with whom Nathaniel R. Mendell, Acting United States Attorney, was on brief, for appellant.

Amy Barsky, with whom Fick & Marx LLP was on brief, for appellee.

Mary Price, Shanna Rifkin, Rebecca F. Izzo, Andrew M. Debbins, and Connors LLP on brief for amicus curiae Families Against Mandatory Minimums.

Jamesa J. Drake, Drake Law LLC, Michael L. Waldman, Courtney L. Millian, Roy T. Englert, Jr., and Kramer Levin Robbins Russell

---

[*] Of the District of Rhode Island, sitting by designation.

on brief for amicus curiae <u>National Association of Criminal Defense Lawyers</u>.

---

August 29, 2022

---

**THOMPSON, Circuit Judge**. Before us is the government's appeal from the district court's grant of a motion for compassionate release filed by appellee, Alfred W. Trenkler ("Trenkler"), a federal inmate serving a life sentence for convictions stemming from his role in a 1991 car bombing. Trenkler's is a familiar face: By our count, this appeal marks his ninth visit to this court after he was convicted and received his life sentence nearly thirty years ago.[1] Consequently, there is a dense factual and procedural background here.[2] For today, though, we primarily assume the parties' familiarity with the extensive history of Trenkler's case, the various issues presented, and the bevy of arguments advanced, providing only the information and context necessary to explain our reasoning and the path forward. As we will explain, we remand this matter to the district court for further review consistent with this opinion.

## BACKGROUND

The latest chapter in Trenkler's litigation story began on January 15, 2021, when Trenkler filed a motion for compassionate

---

[1] The published collection of Trenkler cases consists of: Trenkler v. United States, 536 F.3d 85 (1st Cir. 2008); Trenkler v. United States, 268 F.3d 16 (1st Cir. 2001); and United States v. Trenkler, 61 F.3d 45 (1st Cir. 1995). His other appeals to this court resulted in unpublished writings.

[2] The curious reader can consult the district court's compassionate release Opinion and Order, which comprehensively recaps this history. United States v. Trenkler, 537 F. Supp. 3d 91, 95-96 (D. Mass. 2021).

release pursuant to 18 U.S.C. § 3582 (the statute governing sentence reductions, colloquially known as the compassionate release statute) based on his serious health risks related to the ongoing COVID-19 pandemic as well as the unique circumstances of his case. According to Trenkler, those unique circumstances include: questions surrounding his guilt; the fundamental unfairness of his conviction; the fact that his co-defendant received a lesser sentence; and an error that occurred at his sentencing in 1994, resulting in an unlawfully imposed life sentence.

That the sentencing error was, in fact, error is undisputed. The jury, in convicting Trenkler, found only intent to destroy property,[3] but the trial judge inferred from the evidence an intent to kill, and thus handed down a life sentence.[4] Unbeknownst at the time to the trial judge, prosecution, and

---

[3] Trenkler was convicted of illegal receipt and usage of explosive material with the intent to destroy property, which conduct had caused death and serious personal injury, in violation of 18 U.S.C. § 844(d) and (i), and of knowingly conspiring to commit the foregoing acts in violation of 18 U.S.C. § 371. The trial judge sentenced Trenkler to concurrent life terms on the two substantive counts, and to a concurrent sixty-month term for conspiracy.

[4] We refer to the district court judge who reviewed and granted Trenkler's compassionate release motion, U.S. District Judge William E. Smith, as "the district court," and refer to the judge who presided over the trial and sentencing, U.S. District Judge Rya W. Zobel, as "the trial judge."

defense counsel, this sentence was imposed in violation of 18 U.S.C. § 34 (1988), as incorporated by 18 U.S.C. § 844 (1988), which required life sentences to be assigned by the jury. Six months after Trenkler's sentencing, Congress amended 18 U.S.C. §§ 34 and 844(d) and (i), removing the requirement of a jury recommendation for a life sentence.[5] It seems likely this change aided in obscuring the error, as it was not until almost ten years later that finally Trenkler discovered this sentencing error himself.[6] In the matter now before us, Trenkler points to this institutional failure in support of his motion for compassionate release.

Based on the legal landscape as it then appeared,[7] the district court tackled Trenkler's motion by reasoning through the statutory construction of the compassionate release statute and

---

[5] After the statute was amended, section 844(d) and (i) provided for life imprisonment with no reference to section 34, and section 34 authorized the imposition of a life sentence without any requirement for a jury trial on the issue. See Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 60003(a)(1), (a)(3)(A), (a)(3)(C), 108 Stat. 1796, 1968-69.

[6] Prompted by his discovery, Trenkler specifically (albeit unsuccessfully) challenged this error several times.

[7] In the months after the district court issued its decision here, a panel of this court published a case involving first-impression issues regarding prisoner-initiated compassionate release motions. See United States v. Ruvalcaba, 26 F.4th 14 (1st Cir. 2022). That case, which we'll discuss in much more detail shortly, explained in depth, for the first time, the framework for reviewing prisoner-initiated motions for compassionate release.

applying persuasive sister-circuit precedent. United States v. Trenkler, 537 F. Supp. 3d 91, 107 (D. Mass. 2021).  While the district court was not sufficiently persuaded by some of the circumstances Trenkler proffered to support his motion (questions surrounding his guilt, fundamental unfairness, co-defendant sentence disparity), taken individually, it concluded that the sentencing error constituted an "extraordinary and compelling" reason to grant compassionate release. Id. at 108.  Specifically, the life sentence was handed down by a judge when the controlling statute provided that a life sentence could be imposed only by a jury, and there was no other available avenue for relief from this error.  Id.  Accordingly, the district court reduced Trenkler's sentence from a term of life imprisonment to forty-one years, crediting time served.  Id. at 114.

The government timely appealed, disputing the district court's conclusion that the sentencing error was an extraordinary and compelling reason warranting compassionate release.  It argues that the district court's ruling "circumvents the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as codified in 28 U.S.C. § 2255(h)]'s limitations on successive habeas petitions, supplants habeas law generally, and conflicts with this Court's conclusion that compassionate release represents a 'narrow

exception' to the statutory ban on altering prison terms once they have been imposed."[8]

## DISCUSSION

We review a district court's denial or grant of a compassionate release motion for abuse of discretion. See United States v. Ruvalcaba, 26 F.4th 14, 19 (1st Cir. 2022). Questions of law are reviewed de novo and findings of fact are reviewed for clear error. Id.

Before we proceed, a brief primer will provide important additional context.

Compassionate release, codified under 18 U.S.C. § 3582 and amended by the First Step Act of 2018, Pub. L. No. 115-391, sec. 603(b), § 3582, 132 Stat. 5194, 5239 [hereinafter "FSA"], governs sentence reductions generally. The passage of the FSA in 2018 represented "a paradigm shift" for compassionate release "[b]y empowering district courts to grant compassionate release" on prisoner-initiated motions.[9] Ruvalcaba, 26 F.4th at 22. This

---

[8] It does not appear that the government challenges that this is a valid prisoner-initiated motion, nor does it challenge the district court's conclusion that Trenkler exhausted all other administrative remedies as required by 18 U.S.C. § 3582.

[9] "Section 603(b) of the FSA fundamentally changed the compassionate-release mechanism. The amendment, entitled 'Increasing the Use and Transparency of Compassionate Release,' created a new regime in which -- for the first time -- prisoners may seek compassionate release even when the [Bureau of Prisons] does not deign to act on their behalf." Ruvalcaba, 26 F.4th at 22 (citing FSA sec. 603(b), 132 Stat. at 5239).

resulted in a swirl of litigation around the scope of compassionate release, with other circuits weighing in to interpret the statute to mean that the existing policy statement on compassionate release promulgated by the Sentencing Commission does not constrain a district court when adjudicating prisoner-initiated motions. See id. at 21 (collecting cases from our sister circuits).

Then came Ruvalcaba with our court's take on compassionate release as impacted by the FSA. See id. at 23-24. Ruvalcaba rejected the notion that the habeas statutes provide an extratextual limit on a district court's discretion to categorically omit any challenges based on sentence length or sentencing errors, see id. at 25-26, but explained that any concerns about the potential misuse of compassionate release can still be allayed through the substantive "extraordinary and compelling" criteria and based on appellate review of a district court's determinations, see generally id. at 26-28. Along the way, the Ruvalcaba court agreed "with the overwhelming majority of the courts of appeals that have decided the issue," concluding that the existing policy guidelines do not apply to prisoner-initiated motions. Id. at 21.[10] Under this statutory regime,

---

[10] The district court's analysis relied on some of the same out-of-circuit authority that Ruvalcaba later used in support of its reasoning. Compare Trenkler, 537 F. Supp. 3d at 99-100, with Ruvalcaba, 26 F.4th at 21, 23.

Ruvalcaba explained, the only exception to what may constitute an extraordinary and compelling reason, as made explicit by Congress,[11] is rehabilitation. Id. at 25. Ruvalcaba then reasoned that when reviewing these motions, district courts enjoy broad discretion, and may conduct a holistic review to determine whether the individualized circumstances, taken in the aggregate, present an "extraordinary and compelling" reason to grant compassionate release. Id. at 27, 28. The takeaway is this:

> a district court, reviewing a prisoner-initiated motion for compassionate release in the absence of an applicable policy statement, may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief. It follows that a district court adjudicating such a motion may consider the FSA's non-retroactive amendments to the scope of the mandatory minimum penalties under section 841(b)(1)(A) on a case-by-case basis grounded in a defendant's individualized circumstances to find an extraordinary and compelling reason warranting compassionate release.

Id. at 28.

The parties here disagree about what Ruvalcaba means for Trenkler's case.

Taking issue with Ruvalcaba's holding and the role (if any) it should play in the present appeal, the government takes

---

[11] "Congress has stated plainly -- in a separate statute authorizing the Sentencing Commission to issue general policy statements -- that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Ruvalcaba, 26 F.4th at 25 (alteration in original) (quoting 28 U.S.C. § 994(t)).

- 9 -

the absolutist position that this court cannot consider a sentencing error when making determinations of what qualifies as extraordinary and compelling. In doing so, the government essentially argues as an initial matter that the question is whether Trenkler's motion for compassionate release should have been recategorized by the district court, at least in part, as a habeas motion. The government contends as much and urges from there that it should have been rejected as an unauthorized successive petition for habeas relief under 28 U.S.C. § 2255(h). The government then insists that the district court erred in deeming a sentencing error an extraordinary and compelling reason, and asserts that for us to sign off on this would effectively allow compassionate release to swamp habeas.

Trenkler, for his part, maintains that Ruvalcaba unequivocally sets the standard here; habeas and compassionate release are distinct in purpose and scope, and the district court correctly reviewed his motion under the compassionate release standard as later set forth in Ruvalcaba.

Here's how we see it. The initial question of what may be *considered* in an "extraordinary and compelling" determination by the district court is separate from the secondary, individualized question of what can actually *qualify* as extraordinary and compelling. And while the government would like it to be, the initial question is not at issue in this case. As

- 10 -

noted above, Ruvalcaba clarified that until the Sentencing Commission speaks, the only limitation on what can be considered an extraordinary and compelling reason to grant a prisoner-initiated motion is rehabilitation. 26 F.4th at 25, 26; see also id. at 23-24 ("If and when the Sentencing Commission issues updated guidance applicable to prisoner-initiated motions . . . district courts . . . will be required to ensure that their determinations . . . are consistent with that guidance.").[12]

Contrary to the government's statutory arguments otherwise, this does not alter the fact that habeas and compassionate release are distinct vehicles for relief. Section 2255 deals with the legality and validity of a conviction and provides a method for automatic vacatur of sentences (when warranted under the statute). In contrast, as Trenkler and the amici argue,[13] the compassionate release statute is addressed to the court's discretion as to whether to exercise leniency based on an individualized review of a defendant's circumstances (it is not

---

[12] "The simple fact of the matter is that the Sentencing Commission has lacked a quorum for most of the time that has elapsed since the FSA's passage," Ruvalcaba, 26 F.4th at 21 (citing Guerrant v. United States, 142 S. Ct. 640, 640-41 (2022) (statement of Sotomayor, J., joined by Barrett, J.); United States v. Saccoccia, 10 F.4th 1, 7 (1st Cir. 2021)), and thus "it has not had any realistic opportunity to issue a post-FSA policy statement," id. Now that the Sentencing Commission has a quorum, it could provide policy guidance on compassionate release.

[13] We acknowledge and thank the amici and their attorneys for their helpful submissions.

a demand of a district court to recognize and correct what a defendant says is an illegal conviction or sentence). Id. at 26 ("To serve as a safety valve, section 3582(c)(1)(A) must encompass an individualized review of a defendant's circumstances and permit a sentence reduction -- in the district court's sound discretion -- based on any combination of factors.").

We would add that, in addition to the fact that habeas and compassionate release exist under two distinct statutory schemes, correct application of the "extraordinary and compelling" standard for compassionate release naturally precludes classic post-conviction arguments, without more, from carrying such motions to success. Compassionate release is a narrow exception to the general rule of finality in sentencing. See United States v. Saccoccia, 10 F.4th 1, 3 (1st Cir. 2021).[14]  It is the

---

[14] This is as good a moment as any for us to dispatch the government's argument that Ruvalcaba is inconsistent with Saccoccia -- so much so, it says, that Saccoccia, not Ruvalcaba, should govern here. The government's argument is untenable.

First, Ruvalcaba's take -- that a district court has broad discretion, unbound by the current policy statement, to review prisoner-initiated motions, 26 F.4th at 23-24 -- does not constitute a retreat from Saccoccia's remarks about compassionate release being a narrow exception and having difficult statutory criteria to satisfy, 10 F.4th at 4. Rather, the inherently narrow (and stringent) "extraordinary and compelling" standard still must be met to grant relief. Ruvalcaba, 26 F.4th at 23, 29. These views are compatible and not, as the government argues, irreconcilable.

Second, despite the government's contention otherwise, Saccoccia did not suggest that the FSA did not substantively alter the compassionate release process. The government reads too far

"extraordinary and compelling" criteria for compassionate release that promises this general rule will not be superseded by the exception. See Ruvalcaba, 26 F.4th at 23. Accordingly, the government's contention that Trenkler's motion for compassionate release fails at the threshold question of whether it is a habeas petition in disguise is not persuasive and, in any event, it is now foreclosed by Ruvalcaba.[15]

The question really at issue here is the secondary, individualized question. That is, did Trenkler propose reasons

---

into Saccoccia's reference to United States v. Havener, 905 F.2d 3, 6 (1st Cir. 1990) (Breyer, J.); that reference suggested simply that "extraordinary and compelling" must be read in light of the statute's purpose to address cases of extreme hardship. Saccoccia, 10 F.4th at 4. This is not inconsistent with Ruvalcaba's acknowledgment that the FSA expanded the *use* of compassionate release by allowing prisoners the opportunity to file motions after exhausting administrative remedies. 26 F.4th at 22-23.

[15] Another quick aside, this time to acknowledge that the government offers a separate, but related, threshold argument: that this court's 2005 and 2008 Trenkler decisions preclude compassionate release, which cannot be used to make an end-run around AEDPA. See Trenkler, 536 F.3d at 85; In re Trenkler, No. 04-2147 (1st Cir. Feb. 16, 2005). The government appears to contend that because this court dealt with the sentencing error previously, finding that Trenkler's 2005 petition for writ of mandamus and 2008 petition for writ of coram nobis were essentially invalid habeas petitions, this prevents Trenkler from using the error as a reason to support his compassionate release motion, and thus that the motion itself should be discarded as another invalid habeas petition. We are not persuaded. The government does not point to any binding authority to support this notion, and the argument is similarly overpowered by Ruvalcaba, which instructs district courts to review (emphasis ours) "*any* complex of circumstances raised by a defendant" and says nothing about the type of exclusion the government offers up. 26 F.4th at 28.

for compassionate release that are extraordinary and compelling, under the plain meaning of those terms? See id. (noting that the terms "extraordinary" and "compelling" are afforded their plain meaning).

Ruvalcaba convincingly set the standard for a district court reviewing a prisoner's proposed reasons for compassionate release, making it clear that district courts have the discretion to review prisoner-initiated motions by taking the holistic, any-complex-of-circumstances approach we discussed earlier. Id. at 27, 28. See generally id. at 29-32 (Barron, J., concurring) (expounding, by way of example, on the "soundness" of the premise "that there may be an 'extraordinary and compelling reason' to reduce the sentence when a particular statutory change is considered in the context of the defendant's individualized circumstances"). Indeed, this approach makes sense. After all, it is possible that the whole may be greater than the sum of its parts, and reasons that might not do the trick on their own may combine to constitute circumstances that warrant a finding that the reasons proposed are, in the aggregate, extraordinary and compelling. This is not to say that a district court must find a certain number of extraordinary and compelling reasons. Rather, in conducting their reviews, district courts should be mindful of the holistic context of a defendant's individual case when deciding whether the defendant's circumstances satisfy the "extraordinary

- 14 -

and compelling" standard -- "any complex of circumstances" contemplates that any number of reasons may suffice on a case-by-case basis, whether it's one, two, or ten. See id. at 28. Granted, Ruvalcaba did not address the merits of whether any particular reason or complex of circumstances actually met the "extraordinary and compelling" standard's substantive criteria (nor do we do so now, as we'll explain). And the Ruvalcaba court's instruction to district courts to generally consider "any complex of circumstances" does not foreclose a conclusion that certain reasons, standing alone, may be insufficient as a matter of law when measured against the "extraordinary and compelling" standard. We identified in Ruvalcaba, for example, that a change in sentencing law, standing alone, cannot suffice.

Against this backdrop, consider again the district court's reasoning in granting Trenkler's compassionate release motion. It is clear the district court found the sentencing error constituted an extraordinary and compelling reason warranting a sentence reduction. But its analytical path is susceptible to multiple interpretations when it comes to how it navigated the list of reasons Trenkler offered. On one hand, we can appreciate the possibility that the district court discarded Trenkler's other proposed reasons one by one but, with the holistic context of those reasons in mind, deemed the circumstances surrounding the sentencing error alone to meet the "extraordinary and compelling"

criteria. But we can also see how discarding all proposed reasons except one could represent a singular reason-by-reason analysis, not a review of the individual circumstances overall. In the end, our careful review of the district court's thorough (but pre-Ruvalcaba) decision leaves us uncertain as to whether it took a holistic approach when reviewing Trenkler's proposed reasons and ultimately concluding that the sentencing error constituted a sufficiently extraordinary and compelling reason to grant relief.

In the normal course, this is where we would come in, applying abuse-of-discretion review to assess the district court's work on the compassionate release motion, holding it up against our precedent to assess the accuracy of the analysis offered. But, at this juncture, the circumstances of this case prompt us to take a different tack. We decline to weigh in on the district court's analysis at this time. Instead, because the standard-setting Ruvalcaba was decided on the heels of the district court's ruling, and given the importance of the issues and the gravitas of abuse-of-discretion review, we conclude that the prudent approach is to remand to afford the district court the opportunity to reassess the motion with the benefit of Ruvalcaba's any-complex-of-circumstances guidance. See, e.g., Gastronomical Workers Union Loc. 610 v. Dorado Beach Hotel Corp., 617 F.3d 54, 66 (1st Cir. 2010) (vacating and remanding when intervening precedent clarified a mode of analysis, meaning the district court, without the benefit

of that new case, "did not engage in the requisite analysis"). This prudential approach is especially apt here because the district court's proposed sentence reduction, even if affirmed, would have no practical effect until sometime in the future.

On remand, the district court is permitted to consider any factual developments that have transpired since its May 2021 opinion issued, such as shifts in Trenkler's health status or the ever-evolving COVID-19 pandemic.

We close with this: Today's opinion should not be read as a rejection or endorsement of the district court's outcome or any of its analysis of Trenkler's proposed reasons for granting compassionate release. We express no view as to what should happen on remand.

## CONCLUSION

For the reasons just explained, we <u>vacate</u> the district court's Opinion and Order and <u>remand</u> to the district court for further proceedings consistent with this opinion.